H&H Wholesale Services, Inc. and Ford Goldman, 23446 and 23449. So I understand, Mr. Epstein, you'll proceed and then you've reserved one minute for rebuttal and this will be thereafter you'll proceed and also reserve one minute for rebuttal. Good morning. May it please the court, Josh Epstein of Davidson Gilbert LLP on behalf of appellant Lori Goldman. The district court here issued case-ending sanctions against Lori Goldman without making any specific individualized findings that Ms. Goldman acted in bad faith in furtherance of a fraud on the court. The district court instead imputed the bad faith of other defendants and Ms. Goldman's counsel to her. This was reversible error, which as this court held in Rosbach v. Montefiore, a case in which Judge Raggi was on the panel last August, is subject to a more exacting review than the ordinary abuse of discretion because a district court imposing sanctions is accuser, fact finder, and sentencing judge all in one. In Rosbach, the court held, we require a high degree of specificity in the factual findings of lower courts upon which sanctions for bad faith are based. There is no dispute whether from the appellee or from the magistrate judge or the district judge that bad faith was required here. Why don't we talk about what the district court did say here. Specifically in addressing the very argument you're making to us, the district court said that Ms. Goldman was individually responsible for complying with the court's discovery orders. Failing in that responsibility that was individual to her and proffering manufactured excuses through her counsels and agents for the omissions and the problems that are articulated, that was the basis for the court's finding of bad faith on her part. Help us out with why that's inadequate. Basically a district judge said it was her individual responsibility to meet these obligations. She did not. The explanations offered by her counsel were not persuasive and the court finds bad faith. We are certainly not disputing that her counsel engaged in what appears to be bad faith. But the court is saying it was her individual responsibility to make sure that her counsel was complying with discovery obligations. That is not the law in this circuit, Your Honor. And the reason is because, in fact, of what I just said and what Your Honor and the fellow members of the panel held in Rosbach and earlier panels have held repeatedly, which is that bad faith findings must be personal. In Wolters Kluwer, which is a 2011 case of this court, the court held that bad faith is personal and may not be visited on others. There was no finding of Ms. Goldman's personal bad faith. Well, they withheld over 6,000 documents and e-mails relating directly to Ms. Goldman. And so the suggestion that she had no idea that her personal communications were not being turned over is something that the judge was authorized to discount and to reject. I mean, these were not no longer just general corporate documents of H and H or anything like that. These were her personal documents and e-mails. Right, Your Honor. That's correct. But the thing is that the standard is not based on, it does not require some level of inference or speculation as to what she might have known or should have known. But she took the position that she didn't know anything. And her defense, her claim isn't so much that it's her lawyer's fault. Her claim is that she's always been telling the truth. And the magistrate judge pointed out that she'd submitted a declaration that she was not involved in H and H's operations or buyers selling diabetic strips, that she'd sworn declaration and then pointed out that her declaration was completely inconsistent with the evidence and found after discovery. She said she didn't have an office. Turned out she did. Said she didn't have a position. Oh, she said she wasn't an officer. She had a signed affidavit to that effect. But she was actually involved in all kinds of buying operations with regard to the company. I mean, it was just, I mean, frankly, she came out as untruthful. And this wasn't like the dog ate my homework. It's the lawyer's fault. This is, she continued to profess that she didn't do anything wrong. She was truthful. The magistrate judge said, no, you were not. And so I don't understand. And this is 1763 through 1771, the appendix. I don't understand this argument you're making because she, she said, I don't have an office. Now, one would think she'd know that, wouldn't it? And yet it turns out she did because they found an email from her saying, talking about her office. Doesn't that seem a little inconsistent to you, Counselor? Absolutely, Your Honor. Okay. And so therefore, it was relevant with regard to the magistrate's consideration with regard to whether she'd been truthful or not. Certainly. Okay. However, Your Honor, what the law in this circuit requires are specific individualized findings of fact about the fraud on the court. Okay? The fraud on the court here, this is very important. The fraud on the court is about the production of documents. They said they had 6,000 documents. Then they only turned over in the inappropriate format many less. It went back and forth. It's all laid out in the decisions. Ms. Goldman's declaration or affidavit from 2015 before this happened may have been untruthful, may have generated outrage among or on the part of Magistrate Judge Blum or Judge Ames. She said she was a housewife. She did, Your Honor. But that declaration. Excuse me. I'm sorry. She said that and it was, that was a lie that she had nothing to do with the company. That's a lie. It's, it's not hard to see it. No, it isn't, Your Honor. But that, that statement. And you want us to send it back because it wasn't specific enough as to the lie? No. In that case, that statement, lie or otherwise, is not part, two reasons. Okay. First and foremost, there has to be a specific finding about the fraud on the court by the District Judge. That statement was not part of the causal chain of the fraud on the court that led the Magistrate Judge and then by adoption of the report and recommendation, the District Judge, to issue case-ending sanctions against her. They clearly weren't pleased with her and the reasons for that, as both your statements and your tone clearly indicate and I don't disagree with, are very understandable. I've been, you know, I've only been on this bench 21 years. My colleague, Judge Rogge, a bit longer and Judge of it all here is what led, in my view, it's understandable, the court to throw Ms. Goldman along with the malefactors here. I think, don't tell me that the court threw her under the bus. She, she, she jumped under herself. Go ahead. But Your Honor, if, if this court affirms here, it's not just about this case. Okay. It's about the standard. I understand. So if the court affirms what that is going to mean, at least in my view, and I'm not sitting on the other side of this microphone, is that going forward, District Judges will be able to, in Mr. Waters' words, in his very excellent brief that he filed, will be able to find bad faith in some, some part of the record, and then just refer to the record as a whole and say, that's enough for sanctions issued under the court's inherent power, which the Supreme Court has held must be doled out very carefully and with enormous discretion because of the, from Rosbach that I read. There, there, there will be no procedural safeguard left. Courts can then, going forward, if, if this court affirms here, simply, in, in cases, the facts are not great here, as, as your comments reflect. There's no dispute about that. But think of the next case where the District Judge says, well, you know, looking at the record as a whole, I think you've acted in bad faith. Is that? I'm not sure that that's right. I mean, you're on an abuse of discretion standard here, which means that we have to find that District Court committed an error of the law, which is what I think you're arguing, that the judge did not apply the correct legal standard. But it seems to me your argument is a challenge to the weight the District Court gave to the facts that she did find. I mean, there, the court specifically found that the parties formulated search terms designed to fail, okay? I understand you to attribute that to counsel. But the suggestion by the District Court here is that the withholding was of documents related not only to Howland Trading, not only to Howard Goldman, but specifically to Lori Goldman. And that has to be considered in light of the fact that the, that Ms. Goldman clearly lied about her role and her knowledge here. So the suggestion that the District Court erred in thinking that she played any personal role in the withholding of documents relating to her, some 6,000 documents, seems to me is very hard to argue that she had no factual basis to support such an individualized finding. What am I missing? What you're missing, Your Honor, with all due respect, is that the court, we are inferring, we are imputing, we are on some level speculating because neither Judge Amon nor Magistrate Judge Bloom actually found with the high degree of specificity that this Court's own decisions repeatedly make clear is required here. There was no finding that she was involved in that process that you just highlighted. There is no specific I started you out with what the specific finding was, that she was personally responsible for responding to the discovery orders. She entrusted them to an attorney, but that does not absolve her of her individual responsibility. And she's basically a liar about what individual responsibility or involvement she had in the affairs of this enterprise. So I don't think we have a situation where there were no factual findings or no facts supporting this. So I'm still trying to understand what the abuse of discretion here by the District Judge is. I would say this, Your Honor, and this is also an important point in our brief and something the District Court clearly and the Magistrate Judge got very wrong, and it relates to a decision in which Judge Wesley was on the panel, which is the Chevron v. Donziger case. Because what you're talking about implicitly and then first in the decision and then explicitly as a backstop, a logical backstop offered by both the Magistrate Judge and the District Judge, they said, well, Ms. Goldman points to her lawyer, but she can't do that here. Well, there were three sets of lawyers here, which I think is significant in the sense that the defendants changed their lawyers, am I right, three times? At least. Yes. And so there too, one would expect the clients to understand that there were issues with the lawyers' representations. That may be the case, Your Honor, but the point I was going to make and I would like to make is this, which is the Court here clearly decided that Ms. Goldman was chargeable with the acts and bad faith of her counsel on an agency theory. A lot of... You assign error to that. You assign error to that. I do. That's how you started your argument. It's not the start of my argument, Your Honor? No, that's how you started your argument. You asked us to assign error to that, to that agency determination. Yes. And your fundamental argument, as I understand it, is that she's not responsible, there's all her lawyers, she's not responsible for the acts or omissions of her counsel. Right. That can't be right, because we said, I know that you rely on the case, but I'm looking at a case, a decision from the 70s, and it's not been abrogated. The acts and omissions of counsel are normally wholly attributable to the client, except under extraordinary circumstances, and I've not heard an extraordinary circumstance listed here. So if you are wrong, that is wrong about this agency issue as a matter of our precedent, then how do you prevail? So if, in fact, she is totally responsible for the acts or omissions of her counsel, three sets of counsel in this case, can you prevail? No. I quite honestly, no. You've reserved a minute for rebuttal. Is there any possible? You've reserved a minute for rebuttal. Thank you. Good morning. Good morning, sir. I'm Peter M. Levine, counsel for H&H Wholesale Services. Speaker and operational dean, please. Okay. I am appellate counsel for both H&H Wholesale Services and Howard Goldman. Thank you. The district court erred by not allowing a jury trial on damages. The judgment should be vacated, and the case remanded for a determination of alleged damages. Excuse me? Where in the record did you assert, not you personally, where in the record did counsel assert their right to that? I direct the panel's attention to page 3643 of the appendix. It's a memorandum of law dated April 8th, 2020. At that point, the district court had ordered briefing on when the inquest under Rule 55b-2 to assess damages should occur in relation to the trial against the remaining non-defaulting defendants. Here is what Darrell Jannet, the trial counsel for the H&H defendants, wrote on page 3643. There would be no reason for a jury to know about the sanctions motion against the H&H defendants because that would be prejudicial and could be resolved by an in limine order. That's because there was a discussion about trying the case about the individuals that were not subject to the default, having a jury assess damages as to them, correct? Also liability. There'd be a full trial on liability and damages against the non-defaulting defendants. And the H&H defendants would participate in that jury trial on the limited issue of damages. And I continue, the jury would be able to have a complete presentation on damages and the potential for inconsistent outcomes could be avoided. Let me then read- What were the inconsistent outcomes between a non-jury determination and a jury determination? There were debates about the distribution chains for the gray market goods. The H&H defendants were not responsible for the sale of every single infringing product. They were responsible for just a portion. There were other distribution chains controlled by defendants that were selling other infringing goods. And there was an argument about whether there was an overlap in the distribution chains. And the H&H defendants were saying, look, you have to assess damages based on the actual sales. You cannot attribute a sale within one distribution chain to sales within a different distribution chain. That was the danger of an inconsistent outcome on damages. Abbott knew that the H&H defendants were arguing for a jury trial. Here is their response. Here is Abbott's response on page 3692. Moreover- I'm looking at all of this counsel and it's- I've read all these from 37 to 58 through this. And repeatedly what's being said is that the district court would render a decision as to the H&H defendants after the jury reaches their own findings as to the non-defaulting defendants. I read these pages not as an invocation of the right to a jury trial, but basically as a forfeiture of the argument you're advancing in this court. I disagree because the H&H defendants were arguing for a consolidation of the inquest with the jury trial. Right, but clarifying to the court at almost every turn that it would consolidate that, but then the court would make a decision as to the H&H defendants. I'm quoting here, after the jury reaches their own findings as to the non-defaulting defendants. And that's after, that is after the district court had rejected first the assertion that there would be a jury trial for everybody, then rejected the argument that there'd be a consolidation. I'm quoting from page 3759, which comes before the page you cited us to. I cite page special appendix 195, the order dated December 23rd, 2020. The district court rejected any form of a jury trial. I quote, the court concludes that consolidation would introduce undue prejudice to the parties and tax the jury's focus on, in what is already a complex case. I will grant that the argument I am making here was not exactly presented before the district court. But for an issue to be preserved for appellate review, the lower court must be fairly put on notice as to the substance of the issue, and it was here. That is exactly what happened here. The district court asked the parties to present argument, and the parties did present argument on whether Abbott's damages claim against the H&H defendants should be presented to a jury, and whether the claim should be determined by a jury. Let's get to the question of whether your client had any right to a jury trial on an inquest on damages. Correct. Wright & Miller suggests the answer to that question is no, that the right, the Seventh Amendment right to a jury trial does not survive a default. I know that you've tried to reach a contrary conclusion here by pointing to Federal Rule of Civil Procedure 55B2. But the commentary to that rule, as well as the case law, say that the only statute for which the language you rely on from 55B2 addresses is 1874, Title 28-1874, which provides a specific right to jury trials on damages. No. I don't see where you locate this right to a jury trial on damages after default. Okay, because Rule 55B2 uses the word any. We are examining the phrase, preserving any federal statutory right to a jury trial. And we must examine that phrase as a whole and give effect to every single word in that phrase. But the advisory committee note says that it is intended to preserve the jury trial right found in- The advisory committee note does not say that, Your Honor. May I finish the question? Please. Why don't you let her finish the question, counsel, because frankly, your behavior is objectionable. My apologies. I am being very much-  All right. All right. The committee note indicates that it was meant to preserve the jury trial rights specified in 1874. And Wright and Miller construes the rule the same way. Do you have any authority construing the rule differently? I have authority that says that the language of the rule itself trumps the advisory committee note. And also I explain in my briefs that the advisory About the supersession clause in the Rules Enabling Act. All right, well let me pursue that for you for the moment. The language of the rule is the court may conduct hearings or make referrals, dash, preserving any federal statutory right to a jury trial, dash. There is no federal right to a jury trial on damages under the Lanham Act. So where are you, I mean, your reading would basically say that there is a right to a jury trial on damages in every civil action. And the law has long been the case that that doesn't apply to inquests on damages after default. I'm not, no, I'm not making that broad an argument. I understand your argument. Okay. To understand the meaning of statutory in the context of Rule 55B2, we must ask, how may a statute provide for a right to a jury trial? It can provide for it in two ways. First, it can explicitly provide for a jury trial. Secondly, a statute can provide for a jury trial by creating a statutory remedy within a legal action that is cognizable by a jury. Very few federal statutes actually explicitly confer a jury right, but nonetheless carry the right to a jury trial because the statute will create a cause of action, cognizable or analogous to common law, and with a legal remedy that is exact. Where's the right to a jury trial come from? The Seventh Amendment does that. The Seventh Amendment preserves, does not create, a jury trial. The jury trial is created by the text of the statute. The Supreme Court, just in June 2024, in SEC, Securities and Exchange Commission, versus Jarchese, examined the texts of the Securities Act, the Securities Exchange Act, and the Investment Advisors Act to determine whether the civil penalty provisions and the anti-fraud provisions created a right to a jury trial and said, yes, that is precisely right. This court went beyond the statutory form, went to the statutory substance. In the absence of a jury trial, it would be a statutory violation as opposed to a constitutional violation. It would violate the, it would violate the wording of Rule 55B2. No, no, in the example you used on the SEC, would not providing a jury trial violate a statutory right or a constitutional right? What the Supreme Court ruled there is that the Sarbanes-Oxley Act could not allow the SEC unfettered discretion to bring a claim for civil penalties within the administrative tribunals that- It was really focused on the administrative tribunals. Well, there- It's a corollary to that, whether someone had a jury trial right was an issue. Correct. Right, what the Supreme Court said there is that the defendants did have the jury trial right under the securities laws. And the Congress could not abrogate that right by giving the SEC the discretion to bring such an action within the administrative tribunals. What we're not focusing on here is your client had a right to a jury trial if it had answered the complaint. Instead, it defaulted. I don't- And- There was an answer to the complaint. Well, it defaulted in the end. It was the default sanction. I'm sorry, I apologize. The default was the sanction for your clients not complying with orders of the court and for the fraud on the court. Once there's a default, what authority do you want us to look for that after a default, a party has a right to a jury trial? There's a difference. There are defaults and there are defaults. There's a difference in failing to defend. Rule 55B has the phrase otherwise fails to defend. So the defendant doesn't show up at all. In any context after default, where would we look for the right to a jury trial on the damages question? Preserving any federal statutory right to a jury trial. No, no, what court has said that? What case says that in the context of the default? Mm-hm, this is a case of first impression of this court. You're relying entirely on the language of the rule. You are relying, this is my understanding, but correct me if I'm wrong. Sure. And then we've cut you well past your time, but you're relying entirely on the language of Rule 55. That is correct. Yes, it's a pure issue of statutory construction. It's basically, I am not- We've got the language, and you're particularly focused on the word any. Yes. Okay, thank you. Means every and all of every type. You reserve one minute for rebuttal. Thank you very much. We'll hear from your friends on the other side. Good morning, and may it please the court.  Apologies. Timothy Waters, Patterson, Belden, Abweb, and Tyler on behalf of the appellees. Your Honor has made many of the points I was planning on making already. Well, no, we don't make points, we just ask questions. Right. Your questions implied many of the points that I wanted to hit, and I'll try to be brief. With regard to Lori Goldman, I think it's clear there are two bases upon which this court can uphold, can affirm the decision below. Two arguments, I should say, that Ms. Goldman makes that are contrary to the law. The first is the argument that she cannot be held responsible for the acts of her freely chosen attorneys, and for the agents that she nominated to pull her documents, produce her documents. And the testimony of those agents, both her lawyers and the individuals who she relied on to collect her documents, when they presented to the court what happened, why were none of her documents produced, and the shifting series of lies that was presented by a series of counsel, as well as by her agents. This court's decision in CMA 42nd Street was a case about whether or not pure acts of counsel could lead to the severest of sanctions under Rule 37. The starting point of the court's analysis was, if counsel was willful, of course the sanctions are appropriate against the party. But what if the district court struggled, it could have been that counsel here was so mixed up, that it wasn't a willful failure, they somehow had a subjective belief that they were not in violation of the court's orders, so it would be gross professional negligence. And in CMA 42nd Street, this court held willfulness or gross professional negligence can be attributed to the party leading to case-ending sanctions or the severest sanctions against that party. That case stands out because it is purely about the lawyer's conduct, and there is no question that under these circumstances, we're talking about flagrant abuses of the discovery process and a fraud on the court, that the lawyer's conduct, of course, is attributable to the parties, otherwise the parties could just point the finger and say, my lawyers did it, not me, leaving the prejudice for the other side and leaving no one sanctionable for the conduct. The cases that Ms. Goldman has cited, every single one of them, where lawyers' actions are not attributed to the clients, are cases in the Rule 11 context or otherwise violations in the context of frivolous arguments, bad faith prosecutions, things where the courts say lawyers have expertise, they have ethical duties, and they have the knowledge to know when they're making a frivolous argument, and they know when they are signing a paper in violation of Rule 11. And in that context, this court and others, including the cases that this court has cited from the Eleventh Circuit and otherwise, there's a distinction they draw between the lawyer advancing a frivolous argument and being subject to sanctions and the client. And if the client has no reason to know that a frivolous argument is being advanced on her behalf, then courts have been reluctant to visit the sins of the lawyer upon the client. That has never been the case in the case of Rule 37 or inherent sanctions for fraud on the court, where the essence of the fraud on the court, as the district court judge found repeatedly, was impeding the truth-finding process, intentional violations of court orders, a sustained intentional manipulation of the judicial process to conceal the fact that she was highly involved in the company and to support her lie at the very beginning that she was just a housewife who had nothing to do with the operations of the company. In that context, under CNA, which has never been abrogated, and also we cited the recent decision in Network Data Rooms, LLC, where it was an independent contractor that the plaintiff had hired to build a computer system. Is that a Second Circuit case? That is a Second Circuit case, yes. There was an independent contractor that has been hired by the plaintiff company to build a computer system. He said, I found fraud. I found that somebody stole your trade secrets. And so they brought a trade secrets case. And at the preliminary injunction stage, they offered the fraudulent testimony of this independent contractor who said, I found fraud, and all of his testimony was a lie and his documents were made up. And the court below, the plaintiff argued, yes, there's been a terrible fraud. I can't deny it. But it's not my fault. It was done by this guy. And the district court, citing Chevron, rejected that argument and said, you are responsible. I find bad faith, willful intent on behalf of this independent contractor. You chose him as your agent. You relied on him on your case in chief. His conduct is chargeable to you. Otherwise, who could be sanctioned? What could be done? This court affirmed under simple agency principles, finding, yes, this person was your agent. Your arguments that he was a rogue agent, he went beyond the scope of his authority in making up these arguments, completely agreeing that the plaintiff had no reason to know this was going on, didn't want this to happen. It was done for your benefit. You presented it. The sanctions fall on you. The bad faith is imputable to you. So even without getting to any individual actions by Lori Goldman, in a case involving fraud on the court and very specific findings that are not challenged of the bad acts by lawyers and agents and others, you can't escape it by pointing the finger. The people I paid to do this, the people I chose as my representative before this court, and the people who I chose as my agent to collect and produce my documents for me, they committed the fraud, not me. As Your Honor pointed out, she had the individual responsibility to respond to the court's orders, and at every step along the way for two years, it was fraudulent, it was lies, it was concealing the fraud that was done on her behalf. And then you get to Lori Goldman. And she began the case with the undisputedly false statement, I'm just a housewife. And it wasn't just an affidavit that she had nothing to do with the company. She threatened Rule 11 sanctions. She literally begged the court in her brief, protect me from this abusive litigation tactic of being named just because I'm Howard Goldman's wife. It was a lie. And when every single document with her name on it was intentionally pulled out of production, that's a finding by the district court that is not challenged here, it was an obvious service of that lie. The entire fraud here with regard to Lori Goldman was to conceal her involvement in the company so she could continue to make the fraudulent, perjurous statement, I have nothing to do with it, how could I possibly be responsible for any infringement? And so the idea that the court found no responsibility on her behalf I think makes no sense. Moving on to the argument under Rule 55B2. If you've asked for a jury trial, you can point to a place in the record where you said, I have a right to a jury trial, Your Honor. Now that I'm in default, I want this decided by a jury. Instead, in the arguments below, the primary argument was hold the inquest after the damages trial. Not impanel another jury for me, not hold a second jury trial. Hold my inquest after you do the jury trial. And in the alternative, consolidate, and when you consolidate, the jury will hear my stuff, but then I will take it away from the jury. Your Honor will decide it. At every turn, the argument was the jury won't need to hear this, either you can decide it after the jury hears it, Your Honor, you can decide it concurrently with the jury, but there was never a single request that the jury decide the damages trial. And I don't see how you can get past that. And just very briefly on the substance of the 55B2 argument, the word any. Why is the word any in the phrase any federal statutory cause of action? Well, there's only one statute, but Congress could pass another. So you look for any statute out there that could possibly give this defendant the right to a jury after default. There's only one in existence. Congress could pass one tomorrow. But if you want to look at the statutory text, you can look at Rule 38A, I believe it is, which describes where the jury right comes from. And it says the jury right that's provided under the Seventh Amendment to the Constitution or offset by the same dash as you see in 55B2 or a federal statute shall be preserved and violated. The framers of the rules clearly understood. You have the baseline constitutional right to a jury that applies to any cause of action, state, federal, statutory, common law. Everyone gets the same Seventh Amendment right to a jury trial. And then Congress can, of course, give you an additional statutory right that specifically provides for a jury, even where you don't get one under the Seventh Amendment. Then you turn to Rule 55B2 where it says any federal statutory right to a jury trial shall be preserved. No mention of the Constitution as other courts have held. That is because Rule 55B2 necessarily presupposes that after default, you've lost your constitutional right to a jury trial. Otherwise, Rule 55B2 would be unconstitutional on its face, giving a jury right to some folks but not others. What remains after the constitutional right is gone? A specific federal statutory right that says even though you don't have it under the Constitution, even though you've defaulted, you have a right to a jury trial. And if there's any doubt, they cite to what that statute is. It's a statute specifically providing in the event of default, you still have a right to a jury trial. And that's it. Eighty years of jurisprudence, every single scholar to look at the issue has come out the same way. This federal statutory right that's being referenced is one single statute that has no application here. To adopt the argument that Mr. Goldman is offering, you would have to decide that the people who wrote this rule decided they wanted to create, for some unknown reason, an enduring right to a jury trial only for defendants facing a statutory cause of action under a federal law. If you're on diversity and there's a state law cause of action, no jury right for you. Common law cause of action, no jury right for you. But for some reason, every federal statute gives you a right to a jury trial. Why would that make sense? Why would anyone want that? And if that's what the drafters of the rule wanted, why would they choose this language? Thank you very much. Mr. Epstein? Thank you, Your Honor. One thing that Mr. Waters' very articulate argument left out was that this theory of agency, which was relied upon by the district court in which he advances here today, is reliant entirely on cases involving corporations, which, while they are legally people, can only act through agents. So in these cases, like Network Data Room, like Sine 42nd Street, the defendant corporation could only act through its agent. There is no rule in this circuit, particularly in the context of sanctions, given what I'm about to say after this, that an individual defendant can be bound by the acts of his or her agents. That's pointed out two ways, and we point this out in our brief. Number one, in this court's decision in Ranzmeier v. Mariani from 2011, the court held the rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions. And the court must therefore, quote, specify conduct of the client herself that is bad enough to subject her to sanctions. Both the magistrate judge and the district judge thought they could get around this by relying on Chevron, a case in which Judge Wesley was on the panel. But, and that is a very long, very complex decision because of the incredibly tortured history and the facts that led to it, but what they relied upon, the agency language and holding from Chevron that they explicitly relied upon, and which I must say my learned adversary here avoided and relegated to a footnote in the back of his brief because they had to, was from part of the Chevron decision that had nothing to do with sanctions. This court did not hold in Chevron that a client is bound by the acts of their counsel when it comes to sanctions. That would be in conflict with Ranzmeier v. Mariani. Instead, it held that a client is bound by the acts of their counsel in advancing the enforcement of a fraudulent judgment, which as Judge Wesley I'm sure recalls, perhaps reluctantly from that case, involved a fraudulent or pure judgment from Ecuador. So we have your argument, Warren. Thank you very much. Thank you very much. Ms. Levine. I explain in my main brief that the phrase preserving any federal statutory right to a jury trial is basically the equivalent of the original text of the rule. Shall accord a right of trial by jury to the parties when and as required by any statute of the United States. Rule 38A says provided by any federal statute. All right, how is a jury trial required? May I just ask you one, I think, relatively straightforward question? Sure. I think you may have gotten to it, but your friend, Mr. Waters, made this point. Would you just point to me where in the record, forget Rule 55, just where in the record did you assert your right to a jury trial? Where precisely in the record? Just give me a page. Give me a page. Well, I did that in the opening. 3643. Right, correct. That's it. But even before that point, even before the court ruled on the motion for case-ending sanctions, the court had already ruled on the motions for summary judgment and had ruled that the issue of damages was to be for the jury. Then the court asked the parties for briefing on how the adoption of the report and recommendation, if it in fact was adopted, how might that affect proceedings going forward? How might that affect the ruling on the motion for summary judgment? And the H&H defendant said it would have no effect because the case-ending sanctions were the functional equivalent of a ruling on liability, and Howard Goldman and H&H wholesale had already been found liable for trademark infringement. So Mr. Genet argued the case would just go forward to a jury trial, and Abbott responded no. They waived it or lost it by virtue of the case-ending sanctions. Now, I'll point out there is no written rule and no statute that says the right to a jury trial is automatically abrogated with case-ending sanctions. All right. Thank you very much. Okay. We've reserved, we'll reserve the decision.